IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALIEGH DIVISION

| | | |
|---|---|---|
| RICK MILLER, on behalf of<br>himself and all others similarly situated,<br>Plaintiff | §<br>§<br>§ | |
| | § | |
| VS. | § | C.A. NO. _____ |
| | § | |
| GENERAL MOTORS COMPANY,<br>GENERAL MOTORS HOLDINGS, LLC<br>and GENERAL MOTORS, LLC,<br>Defendants. | §<br>§<br>§<br>§ | CLASS ACTION |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

TO THE HONORABLE COURT:

## INTRODUCTION

1.     Defendant **GENERAL MOTORS COMPANY** and its wholly owned subsidiaries, including Defendants **GENERAL MOTORS HOLDINGS, LLC** and **GENERAL MOTORS, LLC**, collectively referred to as "GM" and "General Motors", is one of the world's largest automakers and currently the number one seller of pickup trucks and full-size SUVs in the United States.[1] Its mission statement: "To Earn Customers for Life." Part of this avowed mission includes GM's "Commitment" to "assign the highest priority to matters that impact our customers' well-being and quality of life" and "to maintain the highest quality standards."[2] As the President of General Motors, Mary Barra,

---

[1] Press Release, General Motors, Three-peat: Chevrolet's Retail Share Grows For Third Consecutive Year - - Up 1 Point Since 2015; (January 3, 2018). http://media.gm.com/content/dam/Media/gmcom/investor/2018/jan/GM-Dec-2017-US-Sales-Release.pdf (last viewed January 8, 2018).

[2] General Motors' mission statement and "Our Commitment" can be found at https://www.gm.com/company/about-gm.html (last viewed December 19, 2017).

said on June 5, 2014, in the wake of the Valukas Report regarding the GM ignition switch issues: "Our job is clear. To build high quality, safe vehicles."[3]

2.      Unfortunately, rather than adhering to its own mission statement, its written commitment to customers and its President's public declaration, General Motors designed, manufactured, marketed and distributed a line of pickup trucks and full-size SUVs with a defective air conditioning system (hereinafter "Class Defect") and concealed the existence and exact nature of the Class Defect from owners, lessees and prospective customers. On information and belief, the vehicles with the Class Defect include the 2015 to 2017 model Cadillac Escalade and Escalade ESV; the 2015 to 2017 model Chevrolet Suburban; the 2015-2017 model Chevrolet Tahoe; the 2014 to 2017 model GMC Sierra 1500; the 2015/2016 model GMC Sierra Heavy Duty; the 2014 to 2017 model Chevrolet Silverado 1500 and the 2015/2016 model Chevrolet Silverado Heavy Duty (hereinafter "Class Vehicles"). Not only did Defendants design, manufacture, market and distribute the Class Vehicles with a defective air conditioning system, but their own documents show General Motors was aware of the Class Defect and neither warned prospective customers nor alerted those who had already purchased or leased Class Vehicles to the problem. This defect in the air conditioning system and GM's conduct form the basis of this class action lawsuit.

3.      Plaintiff and class members are among the General Motors customers who purchased or leased Class Vehicles. They, and all others similarly situated, were misled by General Motors' misrepresentations, deceived by GM's failure to disclose the Class

---

[3]http://media.gm.com/media/us/en/gm/news.detail.html/content/Pages/news/us/en/2014/Jun/060514-mary-remarks.html/

Defect and harmed by the defective air conditioning system designed and installed by Defendants in the Class Vehicles. Plaintiff bring this class action lawsuit both individually and on behalf of all persons who purchased or leased General Motors Class Vehicles with the Class Defect in the State of North Carolina.

## PARTIES

Rick Miller

4.      Plaintiff Rick Miller is a resident of Elm City, North Carolina and a citizen of the State of North Carolina. Rick works as a police officer, and has been so employed for 17 years. He is not a scientist, metallurgist or engineer, and has no special knowledge or experience in the design, manufacture, distribution or marketing of vehicles.

5.      On March 19, 2016 Mr. Miller purchased a used 2015 Chevrolet Silverado, VIN 3GCUKREC8FG115615, from a licensed GM dealership, Hendrick Chevrolet, in Cary, North Carolina. His Silverado has been registered in the State of North Carolina ever since. Mr. Miller was to be the regular driver of the pickup, and he wanted a safe, dependable, durable, comfortable and well-engineered means of transportation.

6.      This purchase was the first Miller had made of a General Motors vehicle since GM's bankruptcy. He saw and relied heavily on representations made in television advertisements by General Motors that its Silverados, and indeed all General Motors pickup trucks, were durable, reliable, high quality, safe, long-lasting and dependable vehicles. Indeed, when he was offered the opportunity to purchase an extended warranty he declined because, as he told the salesman, General Motors is making these long-lasting, durable and reliable vehicles. Why do I need an extended warranty?

-3-

7.     Rick Miller confirmed air conditioning was standard on Silverados prior to his purchase, and, prior to the purchase, he test-drove the Silverado. During the test-drive he specifically tested the climate control system, especially the air conditioning, to make sure it would meet his needs in the North Carolina climate.

8.     At no time prior to the purchase of his 2015 Silverado was Rick Miller warned, either verbally or in writing, that the 2015 Silverado had latent defects in its air conditioning system which could cause the system to cease functioning properly without notice. Had he been so advised, Rick Miller either would have purchased a competitor's vehicle or paid considerably less for his 2015 Silverado.

9.     Miller's 2015 Silverado developed problems with its air conditioning system in June 2017, barely 15 months after it was purchased, when the pickup had approximately 47,000 miles on it. Initially Miller took his car to a local lube shop to have the air conditioning system re-charged with refrigerant at a cost of approximately $50.00. That fixed the problem for approximately 24 hours. When the air conditioning stopped blowing cold air the next day he started calling dealerships to make an appointment to bring his car to the shop for repairs. The Hendrick Chevrolet service department advised him it would take two weeks before they could fit him in and the Don Bulluck Chevrolet service department in Rocky Mount told him it would take approximately a week. He was also advised that is car was out of warranty and that he would have to pay for the repairs.

10.     Not wanting to wait over a week to have his car repaired, and since he was advised he was out of warranty, Miller took the truck to the Goodyear Rocky Mount Tire & Service Center in Rocky Mount to have the problem diagnosed and repairs made. The service center diagnosed a failure in the air conditioning system due to a crack in the condenser that damaged several parts of the system. The Goodyear Rocky Mount Tire &

Service Center installed a new condenser/receiver/dryer, a new compressor and a new compressor to condenser line. They also replaced seals and recharged the system with refrigerant. The total charge was approximately $2,250.00.

11.     Miller's out-of-pocket cost to repair his Silverado's air conditioning system totaled approximately $2,300.00. In addition to his out-of-pocket costs, he bought a car he would not have purchased had he known of the defects in the air conditioning system, overpaid for his 2015 Silverado because it contained a hidden defect in the air conditioning system and at the time of purchase a Silverado with a latent defect in the air conditioning system was , worth less than the identical vehicle without such a defect. Miller has also suffered a diminution in the current value of his Silverado due to the latent defect in the vehicle's air conditioning system. A vehicle with a latent defect in its air conditioning system is worth less than the identical vehicle without such a defect.

<u>Defendants</u>

12.     Defendant General Motors Company is a Delaware corporation with its principal place of business in Michigan. Defendant can be served with citation and a copy of Plaintiff's Original Class Action Complaint by serving its registered agent for service of process: Corporation Service Company; 251 Little Falls Drive, Wilmington DE 19808.

13.     Defendant General Motors Holdings, LLC is a Delaware limited liability company with its principal place of business in Michigan. Based on information and belief, the sole member of General Motors Holdings, LLC is General Motors Company. Defendant can be served with citation and a copy of Plaintiff's Original Class Action Complaint by serving its registered agent for service of process: Corporation Service Company; 251 Little Falls Drive, Wilmington DE 19808.

14.     Defendant General Motors, LLC is a Delaware limited liability company with its principal place of business in Michigan. Based on information and belief, the sole member of General Motors, LLC is General Motors Holdings, LLC, and the sole member of General Motors Holdings, LLC is General Motors Company. Defendant General Motors, LLC can be served with citation and a copy of Plaintiff's Original Class Action Complaint by serving its registered agent for service of process: Corporation Service Company; 2626 Glenwood Avenue, Suite 550, Raleigh NC 27608.

## JURISDICTION AND VENUE

15.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(A) because this is a class action as defined by 28 U.S.C. §1332(d)(1)(B), in which the amount in controversy exceeds $5,000,000.00 exclusive of costs of interests and in which a member of the class of plaintiffs is a citizen of a State different from Defendants.

16.     This Honorable Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because this is an action between citizens of different States where the amount in controversy exceeds $75,000.00.

17.     This Honorable Court has personal jurisdiction over Defendants. This case arises out of contacts Defendants have with North Carolina. All three Defendants conduct substantial business in North Carolina and this suit arises out of Defendants' actions which took place in North Carolina. At all times material to this case Defendants were engaged in the marketing, sale and distribution of Class Vehicles in the State of North Carolina. This cause of action arose from, or is connected with, purposeful acts committed by GM in North Carolina, including the sale in North Carolina of thousands of Class Vehicles. Alternatively, GM conducted substantial and/or continuous and systematic

activities in the State of North Carolina such that all Defendants are "essentially at home" here and exercising jurisdiction over Defendants is reasonable.

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because each Defendant is a "resident" of the Eastern District of North Carolina and a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of North Carolina. Specifically, Defendants advertised the Class Vehicles in the Eastern District of North Carolina, shipped them to the Eastern District of North Carolina for sale and sold them in the Eastern District of North Carolina. Plaintiff purchased his Silverado in the Eastern District of North Carolina, the vehicle's air conditioning system failed in the Eastern District and the vehicle was repaired in the Eastern District of North Carolina. As discussed above, Defendants conduct substantial business in North Carolina and have intentionally availed themselves of the laws and markets of the United States and North Carolina. Additionally, by class definition, the purchases of Class Vehicles occurred in the Eastern District of North Carolina and many Class Vehicles are located here.

## FACTUAL ALLEGATIONS

### How Car Air Conditioning Systems Function

19.     Almost all modern automobile air conditioning systems function in basically the same fashion: they cool the passenger compartment of the vehicle by blowing ambient air over a cold evaporator and into the passenger space. The evaporator is cooled by a chemical reaction involving an inert gas (typically r134a).[4] This gas (referred

---

[4] Many often refer to the inert gas used as a refrigerant in car air conditioning systems as "freon". This is like referring to copying machines as "xeroxes". Freon is actually a registered trademark of The Chemours Company, which uses it for a number of halocarbon products designed to help cool interiors.

to in this pleading as a "refrigerant") circulates in a sealed system through various components that either pressurize or depressurize and heat or cool the refrigerant until it reaches the necessary temperature to allow the evaporator to become cold enough so the air blown through the evaporator will turn cold and cool the interior of the car. The key to a functioning air conditioning system is for the system through which the refrigerant circulates to remain sealed or closed. If a leak develops in the system, the refrigerant will escape, the evaporator will not cool down and the air blown across the evaporator will not turn cold and cool the interior of the car. Additionally, if the refrigerant leaks out of the closed system, it leaves other components of the system at risk for seizing up and failing.

20.     In order to more fully understand the Class Defect, it is useful to examine a typical car's air conditioning system in more detail. The diagram below shows a typical vehicle air conditioning system.



21.     The system is designed to allow the refrigerant to pass through a series of chemical reactions in order to reach the temperature and pressure necessary to cool the evaporator. The first stop for the refrigerant in this process is the compressor. The compressor is a belt driven pump responsible for compressing the refrigerant and pumping it to its next stop. The compressor accomplishes its purpose by drawing into the suction side of the compressor refrigerant that is in a liquid, low-pressure, moderate temperature state and compressing the refrigerant into a high pressure, high temperature gas. The compressor then pumps the refrigerant in its gaseous state through a line to the condenser.

22.     The condenser resembles and functions like a radiator. The hot, compressed refrigerant in a gaseous state comes through the compressor to condenser line and enters the top, or high side, of the condenser. In the condenser the refrigerant is cooled. As it cools, the refrigerant condenses and ultimately exits the condenser as a high-pressure liquid. The cooled liquid refrigerant flows from the condenser through a line into the drier.

23.     The drier has two functions: (1) it "dries" the refrigerant (inside the drier is a desiccant bag that absorbs any moisture that may have contaminated the refrigerant) and (2) it stores the liquid refrigerant until needed.

24.     After the drier the refrigerant flows through another line to the expansion valve. The high-pressure liquid enters the expansion valve, where an internal valve allows only a limited, controlled portion of the refrigerant to exit and enter the evaporator. This internal control over the passage of the refrigerant allows the higher temperature fluid to

cool by keeping the pressure low. This now low-pressure refrigerant flows through a line from the expansion valve into the vehicle's evaporator.

25.     The evaporator, as its name suggests, evaporates. When the low-pressure refrigerant enters the evaporator, it starts to boil, changing from a liquid back into a gas. As it boils it absorbs heat, including heat from the physical structure of the evaporator itself. This causes the evaporator to become very cold. Meanwhile, the air conditioning system's blower motor and fan are pushing air across the cold evaporator. This passage converts to ambient temperature air into the chilled air that enters the passenger compartment. The compressor, in the meantime, draws in the low-pressure refrigerant from the evaporator, and the cycle starts again.

### The Class Vehicles

26.     The Class Vehicles involved in this case include:

- Cadillac Escalade and Escalade ESV, model years 2015 to date;
- Chevrolet Suburban, model years 2015 to date;
- GMC Yukon and Yukon XL, model years 2015 to date;
- Chevrolet Tahoe, model years 2015 to date;
- GMC Sierra 1500, model years 2014 to date;
- GMC Sierra Heavy Duty, model years 2015/2016;
- Chevrolet Silverado 1500, model years 2014 to date; and
- Chevrolet Silverado Heavy Duty, model years 2015/2016.[5]

27.     Based on information and belief, the Class Vehicles are all built on a single vehicle platform, referred to internally at General Motors as GMT K2XX,[6] and the air

---

[5] http://gmauthority.com/blog/gm/gm-platforms/k2xx/ (last viewed December 20, 2017).

[6] *Id.*

-10-

conditioning systems in these Class Vehicles share the same design. Based on information and belief, over 2 million Class Vehicles have been sold in the United States.[7]

### The Condenser in the Class Vehicles

28.     As described above, the condenser in the air conditioning system of cars functions as a heat exchanger. Refrigerant enters the condenser hot and is cooled there. In Class Vehicles the condenser serves as more than a heat exchanger for the refrigerant in the air conditioning system. According to General Motors, the condenser is a "combination transmission fluid/oil and AC condenser cooler." This means the condenser has multiple lines running into and out of it, carrying different fluids at different temperatures, and there is a significant amount of heat exchange taking place.

### The Class Defect in the Air Conditioning System

29.     The defect in Class Vehicles is that components of the air conditioning system fail during normal, everyday use, allowing refrigerant to leak out. The absence of refrigerant prevents the evaporator from becoming cold, causing the system to blow hot air into the car's passenger compartment and, in some cases, causing other parts of the system to fail. Based on information and belief, there are at least two defective components, and there may be more.

---

[7] http://media.gm.com/dld/content/Pages/news/us/en/2017/jan/0104-gmsales/_jcr_content/rightpar/sectioncontainer_0/par/download_0/file.res/Deliveries-December-2016.pdf; http://media.gm.com/dld/content/Pages/news/us/en/2016/jan/0105-gmsales/_jcr_content/rightpar/sectioncontainer_0/par/download_0/file.res/GM-Deliveries-December-2015.pdf;
http://media.gm.com/dld/content/Pages/news/us/en/2015/Jan/gmsales/_jcr_content/rightpar/sectioncontainer_0/par/download_0/file.res/Deliveries-December-2014.pdf; and
http://media.gm.com/dld/content/dam/Media/gmcom/investor/2014/jan/Deliveries-December-2013.pdf

30.    The first defective component is the line leading from the compressor to the condenser. This line consists primarily of an aluminum tube connected to a rubber hose. On information and belief, this line can fail in two ways. First, the aluminum tube can become disconnected from the rubber hose, creating an opening in the line that can allow refrigerant to escape. Second, the aluminum tube itself has a material defect that can allow the tube to rupture, also allowing refrigerant to escape.

31.    GM has recognized this defect. It no longer manufactures the compressor to condenser line that was original equipment in the Class Vehicles. Instead, in Technical Service Bulleting number PIT5331, dated October 6, 2014, General Motors instructed mechanics that if they find a failure in this line, they are to replace it with a newly designed line and install a bracket in the system to minimize flexion and movement of the compressor to condenser line. Unfortunately, customers who suffer this failure after the vehicle is out of warranty are required to purchase and pay for the installation of these new parts, thus having to pay twice to obtain a functioning air conditioning system. Further, Bulletin #PIT5331 did nothing to protect owners and lessees who had not yet suffered catastrophic failure of their system. They were not even advised of the existence of this latent defect. Finally, subsequent potential purchasers or lessees of the Class Vehicles were not warned of the Class Defect.

32.    The second defective component in the air conditioning system of the Class Vehicles is the condenser itself. On information and belief, the original condenser has a material defect that renders it unable to withstand the day-to-day normal operation of Class Vehicles. On information and belief this defect is most likely due to: (i) the use of

an inadequate material to build the condenser, (ii) the use of an insufficient amount of material in the manufacture of the condenser and/or (iii) inadequate welds.

33.    It appears General Motors recognizes the condenser installed as original equipment in the Class Vehicles is defective. In "November 2017" General Motors mailed a notice to some, but not all, owners of certain Class Vehicles advising their particular model "may have a condition where thermal cycling on the combination transmission fluid/oil and AC condenser cooler creates a crack that may allow refrigerant to escape. This condition consequently may deactivate the AC system…." Thermal cycling causing a crack is another way of saying: the design of the condenser is defective because it lacks the tensile strength, for whatever reason, to withstand the day-to-day demands of expansion and contraction caused by use of the air conditioning system.

34.    The Class Defect existed at the time the Class Vehicles left the possession of General Motors.

35.    While some of the Class Defects manifested themselves within the warranty period of 3 years or 36,000 miles whichever comes first, many, such as Rick Miller's, did not, leaving the owners unable to obtain reimbursement from General Motors for their repair costs.

### *The Class Defects Create Safety and Health Dangers*

36.    Obviously lack of air conditioning affects the comfort and well-being of drivers and passengers in Class Vehicles. It also poses a safety hazard, especially in the summer months. For example, one owner reported being involved in an accident because of the air conditioning defect:

I have a 2014 Chevy Silverado **air conditioner went out almost got in a very bad accident it was extremely hot outside** had just got off work started driving down the road and **got real dizzy and lightheaded and ended up running into a pole on the side of the road I'm very lucky.** That is the only thig I ran into I need to get this problem fixed fast before something gets hurt bad.[8]

Two owners expressed concerns for the safety of their children on carproblemzoo.com:

Vehicle started to blow hot air when air conditioner was on. Brought this in to get it fixed twice and last time we were informed that there is a hole in the condenser and that gm is trying to find a manufacturer for the part but have no timetable as to when the part will be available. We also called gm and they confirmed that there is an issue but have no timetable on when this will be fixed. They were working with one manufacturer that hasn't been able to produced the part so now they are working with another manufacturer. **For the safety of my children, this is unacceptable**.[9]

I was informed that the [2015 Tahoe] air condenser is a faulty part and is not working on my vehicle. Also, GM has knowledge of this issue, for it is a known issue with Chevrolet Tahoe. The part to fix this problem is on back order, and there are no parts in production, for they have not come up with a remedy to replace the faulty part. Therefore, I do not have air conditioning within my vehicle. **Thus, causing a safety issue, for it is 90 degrees where I live, and I have infant twins that are transported with my vehicle.**[10]

These complaints were echoed by "bridegroom", who noted in his post:

I have been waiting to get my air conditioner fixed now for months and I keep getting told there are no Condensers available. I have talked with service writers at GM dealership's well as other Sierra owners and they all have the same problem for the most part.

---

[8]   https://www.torquenews.com/3768/owners-2014-chevrolet-silverados-are-hot-about-ac-problems?page=3 (emphasis added) (last viewed December 22, 2017).

[9]   www.carproblemzoo.com/gmc/yukon/2015/air-conditioner-problems.php   (emphasis added) (last examined December 22, 2017).

[10]   http://www.carproblemzoo.com/chevrolet/tahoe/air-conditioner-problems.php (emphasis added) (last examined December 24, 2017).

> This needs to be put on a recall list or I have decided to file a class action lawsuit in this matter regarding all Sierra owners across the country.
>
> **I, as well as I am sure other people, have serious breathing issues in hot weather and need my truck fixed promptly**.[11]

37.    In addition to safety problems posed by exposure to excessive heat in a car, the Class Defect creates a hazard when the climate control system is used to defrost/defog the front windshield. Without a functioning condenser, the defrost/defog modes of the climate control system will not function. This leaves the driver potentially unable to see out of the front windshield. That is what happened to the following driver, who complained to the National Highway Transportation Safety Administration.

> GM condenser issue. GM has a known issue with 2014-16 [Tahoes] using a defective condenser. They have a new part# that is on national backorder and are unwilling to do anything for their customers waiting for the part. I was driving down the freeway, kids in tow on a rainy, muggy day…**My windshield began to fog and with no condenser to run the AC I was unable to [de-fog] my windows.** Unable to see a thing, I had to pull over, on the freeway, carefully, and find a child's coat in the very ack to wipe down the windows to [get] visibility. **This is a safety issue and clearly negligence on GM's part and they would be liable if/when this creates a serious accident**.[12]

38.    Finally, the defects in the air conditioning system could pose a safety problem if the system fails while the Class Vehicles are in operation. Such a failure could cause the driver to become distracted while he or she adjusts the climate control system in an effort to solve the problem.

---

[11] https://www.carcomplaints.com/GMC/Sierra_1500/2014/AC_heater/AC_not_working.shtml (emphasis added) (last viewed on December 23, 2017).

[12] NHTSA ODI 1099497 (incident date listed as June 13, 2017) (emphasis added).

39.     It is very clear that the defects in the air conditioning systems of the Class Vehicles not only affect the comfort of those in the vehicles, but also pose serious health and safety risks.

### There Were So Many Defects GM Could Not Repair or Replace the Parts

40.     A cursory review of the websites cited in this pleading reveals hundreds of complaints about the defective air conditioning systems in Class Vehicles. There were so many complaints the NBC Station in Chicago, Channel 5, investigated. Its report was aired on or about August 9, 2017. In the segment Lisa Parker of "NBC 5 responds" reported:

> Drivers of popular General Motors vehicles nationwide say they are in a fix: the A/C in their newer-model trucks is not working, and repair parts are nowhere in sight. Among the vehicles affected: Chevrolet Silverado, Tahoe and Suburban; GMC Sierra, Yukon and Yukon XL; and Cadillac Escalade and Escalade ESV.
>
> NBC 5 Responds found 100 cases recently reported to the National Highway Traffic Safety Administration and scores of other unhappy GM drivers lashing out online. **While General Motors acknowledges the problem and a national backlog on replacement parts, no recall or notice to dealers, called a Manufacturer's Communication, has been issued.**
>
> The situation leaves drivers frustrated, waiting weeks to get their hands on the needed part during the hottest part of the year, and for those whose cars are just out of warranty - - facing repair estimates ranging from $1,100 to more than $4,000.

(emphasis added). After a conversation with one particular family who found their "condenser hose had cracked", allowing the refrigerant to escape, the reporter noted:

> Online, we found plenty of company for the Kuffels [the family whose hose cracked]. Drivers who tell NHTSA they've waited weeks multiple weeks but can't get their hands on needed parts. Some who faced estimates ranging from $1,100 to more than $4,000 to fix it. Many drivers in states with summer temperatures that soared above 100 degrees, afraid to put their kids or their pets in their own vehicles.

-16-

Lisa Parker then contacted General Motors, which acknowledged the longstanding backlog, and responded in writing:

> "We are aware of the part constraints of air-conditioning units available for service repairs of some GM full-size utilities. We have resolved the issue with our supply base, and have already doubled the number of parts produced each week for service repairs. We expect to fulfill the back ordered parts by the end of August, prioritizing those customers who have waited the longest for replacements. We apologize for any inconvenience this has caused, and are working with customers on an individual basis to meet their needs."

Parker further reported:

> GM confirms the models affected include the Chevrolet Silverado, Tahoe and Suburban; GMC Sierra, Yukon and Yukon XL; and Cadillac Escalade and Escalade ESV, but did not specify which model years.[13]

41.     Six weeks later, on September 19, 2017, the NBC station in the Dallas-Fort Worth Metroplex, Channel 5, aired the results of its own investigation. Wayne Carter of D-FW NBC 5 Responds was the reporter for the segment, and it was posted online on September 19, 2017. In his investigation he reported that dozens of viewers had complained to the station:

> Is there anything more uncomfortable than driving around without air conditioning during a North Texas summer?
>
> Just a few hours can be brutal, but imagine a few months.
>
> Several General Motors customers have been waiting that long to get the A/C repaired in their vehicles. **Many have complained - - dozens of you to us.** Now, we have some answers.

---

[13] Report posted online on August 10, 2017 found at https://www.nbcchicago.com/news/local/gm-air-conditioning-responds-439572983.html (last viewed December 26, 2017).

> The problem is happening in some of GM's full-sized SUVs, including the ones made in Arlington. There are 2014 and 2015 Tahoes, Yukons and Silverados - - just a couple of years old - - with air conditioning that has gone bad.

(emphasis added). Then Carter reported on the futility of requesting assistance from GM:

> GM initially told NBC 5 Responds the back-ordered parts would be fulfilled by the end of August. That was nearly three weeks ago. After calling again for an update this week, the GM spokesperson refused to comment.[14]

### General Motors' Documents Reflect Actual Knowledge of these Defects

42.   General Motors' own documents establish GM had actual knowledge of the Class Defect in the Class Vehicles from the beginning of the introduction of the Class Vehicles in the market. Technical Service Bulletin #PIT5331 was issued by General Motors on October 6, 2014. It references "the compressor to condenser line" in early models of the Class Vehicles and notes "[s]ome owners may comment that the a/c is blowing warm." In #PIT5331 General Motors goes on to write:

> If, after performing normal diagnostics and the source of the leak is either not found, or it is found at/near the rear of the compressor, it may be caused by a small crack in the compressor to condenser line.

> The compressor to condenser line may have a small crack or pin hole located at the inside radius of the first bend near the compressor, as shown below.

---

[14] Report posted online on September 19, 2017 at https://www.nbcdfw.com/news/local/Some-GM-Chevy-Chevrolet-GMC-Owners-Have-Lengthy-Wait-for-Air-Conditioning-Repairs-445827893.html (last viewed December 26, 2017).



If the a/c line cracks, it may spray oil and refrigerant onto the a/c compressor, making the leak very hard to identify.

To repair this condition and prevent it from reoccurring, replace the compressor to condenser line and install the line bracket shown below. After completing the repairs, recharge the refrigerant system and perform a leak test to verify proper operation.

On information and belief, in order to write this document, General Motors had to have received such a large number of complaints that it felt the need to investigate the cause of air conditioning failures, attempt to develop a solution, design new parts, have the new parts manufactured and write the Technical Service Bulletin. The time it would take from receipt of the complaints through investigation, to the development and manufacture of the replacement lines and brackets, to the writing and issuance of Technical Service Bulletin #PIT5331, would indicate that General Motors had actual notice of the air conditioning defects in 2013. *See, e.g. Falco v. Nissan North America, Inc., 2013 WL5575065 at \*6 (C.D. Calif. 2013).*

-19-

43.     General Motors continued to receive notice of the problems with the air conditioning system in Class Vehicles throughout 2014 and into 2015. General Motors maintains online forums where customers can register complaints about their vehicles directly with GM. A number of complaints about the Class Vehicles were made directly to GM on those forums. For example, on August 4, 2014, "Magnes" posted the following:

> We bought our 2014 Chevy Z71 LTZ 4 Door ½ ton truck [a Chevy Silverado] last June when they first came out. My wife was hell bent on getting on as soon as she saw the new design. We flew from Mississippi to Houston, rented a car, and drove to Austin to pick it up. It's a good looking truck but now that we've had it just over a year, putting some miles on it (almost 34,000), and the warranty is about over with, the AC has gone out on us.
>
> The AC is just blowing hot air. Had been working fine up until this afternoon. The controls all work, the vents change as they should, just no cool air.
>
> Has anyone else had this issue?

He received a response from "Amber N", who identified herself as being with Chevrolet Customer Care. Magnes' post drew a follow-up on August 24th from "Jacobmo", who asked "same issue this morning a/c is blowing HOT air. what was the problem with yours?" Jacobmo's post drew an acknowledgement and reply from "Kristen A." with "Chevrolet Customer Care". That same thread drew subsequent customer complaints on August 31, September 27 and October 7 of 2014, and March 6, March 8, March 10 and March 30, 2015, all about air conditioning issues on this model vehicle. Almost all these posts received a response from individuals identifying themselves as being with "Chevrolet Customer Care". On May 2, 2015, "TexasTank" weighed in, writing:

> Looks like this is a very common issue and gm needs to own up to this issue! I too had my a/c compressor replaced at 17k miles. Now at 42k miles less then a year on the new compressor "yes i drive allot", my a/c is out again! What is the deal here! I called up the dealer

and they supposedly said im out of warranty but since its been less then a year on the new compressor they will have to check with management [sic] this monday coming [sic] up. I hope i don't get the run around bs because im not in the mood.[15]

44.     On May 29, 2015, over one year before the Howards experienced the failure of their air conditioning system, General Motors issued Engineering Information Number PIE0340 regarding "A/C Inoperative or Poor Performance on Recent Built Vehicles." This document refers to 2015 models of the Class Vehicles. General Motors starts by observing that "Some customers may comment on the A/C not performing as intended or the A/C not performing at all." Most importantly, GM goes on to state that this air conditioning system problem "may also be noticed during the Pre-Delivery Inspection (PDI) of a vehicle." This can only mean that before May 2015 dealers were reporting air conditioning problems with early model Class Vehicles **before the vehicles could be placed on the sales lot!** There is even more damaging information contained in this document. Under the heading "Cause" General Motors wrote: "GM Engineering is attempting to determine the root cause of the above condition [A/C Inoperative or Poor Performance]." That would indicate that as of the summer of 2015, not only was GM aware of the air conditioning system defects in the Class Vehicles, but neither knew the cause of the problems not had developed a solution.[16]

---

[15] All quotes found at https://chevroletforum.com/forum/2014-gmtk2xx-110/2014-silverado-ac-problems-already-67170/

[16] The May 24, 2015 Engineering Information also means the 2014 proposed fix set out in Bulletin #PIT5331, including a new line and a bracket, did not fix the Class Defect. *See*, GM sponsored website http://www.gm-trucks.com/forums/topic/200888-ac-condenser where in response to an inquiry about the bracket, on May 2, 2017, "O_J_Simpson" posted "Won't work. The bracket was not a successful band-aid, I mean fix. GM has a newly redesigned hose in another attempt that is to be used instead of the bracket now." (last viewed December 23, 2017).

***General Motors' Pre-Release Testing Should Have Revealed the Class Defect***

45.     On information and belief, prior to the original release of any model vehicle, including the Class Vehicles, General Motors subjects the designs of the vehicle and its component parts to careful engineering scrutiny and performs extensive testing to ensure the end product meets consumer expectations. On information and belief this evaluation and testing occurs before the first vehicle is released for distribution and sale. During this period prior to the release of the first vehicles, General Motors tests, studies and evaluates how the component parts of all systems, including the air conditioning system, handle ordinary daily use. This pre-release testing data and evaluations, on information and belief, should have revealed the Class Defect prior to the sale of the first Class Vehicle in 2013. Based on information and belief, Defendants knew or should have known of the Class Defect before the introduction of the Class Vehicle onto the market.

***General Motors' Data Immediately Post-Release Should Have Revealed the Class Defect***

46.     General Motors tracks consumer complaints and warranty claims made to it and to its dealers, as well as replacement part sales data, from the first day the vehicles are released on the market. Given the time between introduction of the K2XX line of vehicles and the issuance of Technical Service Bulletin PIT5331, on information and belief, Defendants knew in 2013 immediately after the release of the Class Vehicles that there was a defect in the Class Vehicles' air conditioning system.

***General Motors Has Not Yet Developed a Solution to the Class Defect***

47.     It appears General Motors has not developed a fix for the Class Defect. "Tootall 29" wrote on the same GM customer website on October 15, 2017:

Bought a 2017 LT z71 used and the AC worked great for a while, no reports on the car fax that it had been replaced before, but on the way to Texas the other day (moved from Florida where it was bought) it started blowing warm air. And thats all it really does now.[17]

### General Motors' Subsequent Conduct

48.     Despite the fact GM has long had actual knowledge of the Class Defect in the Class Vehicles, it was not until November 2017 that General Motors advised certain owners and lessees of certain Class Vehicles of the Class Defect. Plaintiff was not among those notified. On information and belief, General Motors has not warned potential purchasers or lessees of the Class Vehicles about the Class Defect. Indeed, to the contrary, General Motors has continually promoted the quality, durability and dependability of the Class Vehicles without mentioning the latent defects in the air conditioning system.[18] For example, in its brochure for the 2014 Chevrolet Silverado 1500 GM describes the vehicle as "Strong. For all the roads ahead" and "Stronger, smarter and more capable than ever." It continues making similar representations in subsequent Silverado brochures, including describing the Silverado as "The most dependable, longest-lasting full-size pickups on the road" (2016 brochure). Similar claims are made

---

[17] *See also*, YouTube video posted on May 10, 2017 by mechanic Cesar Vega "2014 GMC SIERRA AC CONDENSER PROBLEM!" noting there is "the exact same problem" with "2013 2014 2015 2016 2017 GMC Sierra Chevy Silverado GMC Yukon [and] Chevy Tahoe," "all have the same AC condenser problem." Vega goes on to conclude GM "need[s] to consider this a recall," at https://www.youtube.com/watch?v=c4f_SgqeOMtl (last viewed December 23, 2017).

[18] This is even though the 2014 Silverado and Sierra had been recalled six times by July 2014 and were referred to as "the year's most frequently recalled vehicles." http://money.cnn.com/2014/07/28/autos/most-recalled-vehicle/index.html (last viewed December 26, 2017). GM could have fixed the air conditioning system while the vehicles were in for repairs to the steering system, transmission, oil cooler line or any of the other reasons for the recalls.

about the other makes and models of the Class Vehicles. GM described the 2014 Sierra as GM's "most dynamic and advanced pickup ever"; the 2014 Silverado as serving as "Your new home on the range"; the 2015 Tahoe as providing "Year-round Comfort" and reflecting "Premium in Every Way"; the 2016 and 2017 Chevrolet Suburbans as "The American icon that has no equal" and "the ideal vehicle for the modern family"; and the 2015 Yukon as being "Professional Grade". These brochures were but a piece of the General Motors' multimedia advertising campaign found on television, radio, the internet and billboards, and newspapers, magazines and other print media. This GM advertising was aimed at convincing potential buyers and lessees the Class Vehicles were premium quality products that included "the most dependable, longest lasting vehicles" on the road, providing "year-round comfort" that would allow the cars to serve as the buyer's "new home on the range." Nothing could have been further from the truth.

49.    Defendants each had actual knowledge they designed, manufactured, marketed and were actively distributing Class Vehicles with a defective air conditioning system that threatened the safety and comfort of those who drove them or rode as passengers in them. On information and belief, Defendants made the knowing and intentional decision not to advise prospective purchasers or lessees of the defects, and not to notify those who had already bought or leased the Class Vehicles of the problems. GM apparently received numerous complaints about these problems. There were so many complaints that the needed replacement parts took months to obtain. As if this delay was not enough, GM then charged those who needed repairs and were out of warranty for new parts and labor, in essence requiring them to buy, for the second time, a functioning air conditioning system for their vehicles. It was not until November 2017 that,

for the first time, General Motors advised some owners of certain Class Vehicles that there "may" be a latent defect in the air conditioning system.

### Class Vehicle Warranties

50.    On information and belief, all Class Vehicles came with a written express warranty from General Motors to the new purchaser. This warranty was entitled "New Vehicle Limited Warranty" and covered the Class Vehicles, "Bumper-to-Bumper" for "the first three years or 36,000 miles, whichever comes first."[19] This warranty applied to "GM vehicles registered in the United States" and covered "repairs to correct any vehicle defect" "related to materials or workmanship occurring during the warranty period." While certain components of the Class Vehicles were excluded from this coverage, the Class Defect was not. The warranty also stated warranty repairs would be done within a "reasonable time".

51.    In November 2017 certain owners of certain Class Vehicles received a letter from General Motors notifying them of a "condition" in their "condenser cooler" where "thermal cycling" "creates a crack that may allow refrigerant to escape." The letter advised these owners that "General Motors" would provide "additional protection for the condition described above" for 5 years or 60,000 miles, whichever occurs first, in Suburbans, Tahoes and Yukons. For owners of Cadillac Escalades the extension was increased to 6 years or 72,000 miles, whichever occurs first. Silverados and Sierras were not included in this extension. That means owners and lessees of Silverados and Sierras, such as Rick Miller, did not receive any "warranty extension". Owners of Class Vehicles who did

---

[19] Certain vehicle components, such as the powertrain, received longer coverage.

receive an extension and either have suffered or will suffer a failure of their Class Vehicle's air conditioning system due to the Class Defect after the extension period are still forced to pay for the repair cost of replacing the Class Defect and installing new parts. Further, owners and lessees who have not yet suffered a catastrophic failure are driving Class Vehicles with a latent defect in their air conditioning system, leaving the vehicles with a substantially diminished value. Finally, potential customers and lessees are not advised of this latent defect.

### *Miller's Receipt of the Warranties*

52.    It was not until after the sale had been agreed upon that Rick Miller was given the General Motors' warranty book and advised these were his warranties. Even though he purchased his Silverado used, the warranties remained in effect for as long as they were scheduled to last in the warranty book. There was no negotiation with respect to the warranties, nor was there even an opportunity for him to negotiate the terms or conditions of the warranties with any of the General Motors defendants. At the time of the sale and Miller's receipt of the General Motors' Limited Warranty, Defendants knew or should have known of the Class Defect and that Miller and other class members, as lay people, neither were aware of the Class Defect nor did could they detect the problems. Had Plaintiff and class members known of the Class Defect they either would not have purchased their Class Vehicle, or they would have paid less for the Vehicle.

### **RULE 9(b) ALLEGATIONS**

53.    Pursuant to the requirements of Rule 9(b), Plaintiff, both individually and in his capacity as class representative, adopts all allegations set forth in the preceding paragraphs with respect to fraud.

*What*

54.     The type of facts omitted and/or hidden by General Motors concern the defects in the air conditioning systems of the Class Vehicles designed, manufactured, marketed, and sold by Defendants. These defects consisted **at least** of both a compressor to condenser line and a condenser of inadequate strength and sturdiness to withstand normal day-to-day operations of the vehicles. These defects created a condition in which the air conditioning system of a Class Vehicle could fail at any moment without any notice to the driver. General Motors should have notified all who had purchased or leased Class Vehicles of these facts, as well as all prospective purchasers and lessees.

*Why*

55.     The reason the concealment of the defects in the air conditioning system of the Class Vehicles is misleading is because customers are unlikely to purchase a vehicle with known defects, especially ones that could cause the air conditioning system to fail without notice at any moment, when a similar vehicle with a dependable air conditioning system can be bought from a different manufacturer. This makes the reason for the concealment obvious: in a highly competitive market General Motors wanted folks to purchase or lease GM pickup trucks or SUVs as opposed to buying similar vehicles manufactured by their competitors. The sales of the Class Vehicles are especially important to General Motors, as it is these sales that are driving Defendant General Motors Company's corporate profits.[20] While Plaintiff does not know the identities of the

---

[20] "Analysts say GM makes $10,000 or more on each big SUV and pickup [the Class Vehicles] as people load them out with options." The demand is so great that the factories producing these vehicles are "running full-on, three shifts, to meet demand," according to GM's Chief Financial Officers. Tom Kirsher, *GM Is Motoring as Profit Jumps 34 Pct on US Truck, SUV Sales* Fox Business, April 28, 2017

Defendants' employees who will be able to identify the number of Class Vehicles sold, the average profit for each sold, and what percentage of Defendant General Motors Company's profits come from the sales of Class Vehicles, Defendants do and will easily be able to identify those individuals in discovery.

**How**

56.     General Motors' own internal documents and documents showing the original equipment parts are no longer manufactured confirm the existence of latent defects in the air conditioning systems of Class Vehicles. The internal documents also confirm that General Motors long knew about the latent defects yet did not reveal the existence of the Class Defect to those who already owned or were leasing the vehicles. General Motors' concealment from prospective purchasers and lessees has continued since the Class Vehicles have been on the market.

**When and Where**

57.     General Motors should have advised owners and lessees of the air conditioning defects as soon as it became aware of them and should have alerted prospective owners and lessees to the problem prior to their purchase or lease of the Class Vehicles. Notice of the air conditioning system defects should have been given to owners and lessees in a recall notice or as part of one of the other recall notices issued with respect to these vehicles. Notice of the air conditioning system defects should have been given to prospective owners and lessees in General Motors' advertising, including TV, radio and internet ads as well as brochures for the Class Vehicles. No such notice

---

http://www.foxbusiness.com/markets/2017/04/28/general-motors-profit-up-34-percent-on-us-truck-suv-sales.html (last viewed January 8, 2018).

has been given. It was not until November 2017 that GM advised some current owners about the defects, but it still has not alerted any prospective buyers or lessees to the problems.[21] Not only has GM long-concealed the defect, it has continued to market Class Vehicles in written advertisements as "dependable", "long-lasting", "stronger, smarter and more capable than ever", providing "Year-round Comfort", reflecting "Premium in Every Way", "the ideal vehicle for the modern family" and "Professional Grade".[22]

### Who

58.    Defendants know and can easily ascertain the identity of their employees responsible for designing, testing and evaluating the air conditioning systems prior to the introduction of the Class Vehicles on the market, as well as those who analyzed the system when problems were reported, developed fixes, and made decisions regarding design changes. Plaintiff does not have the names of these employees, but Defendants know exactly who they are. The same is true for the identity of those who made decisions

---

[21] Engineering Information #PIE0340 further confirms this deceit. In the opening paragraph of the document GM wrote: "Proceed with this EI ONLY if the customer has commented about this concern AND the PIE number is listed in the Global Warranty Management/Investigative History link (GWM/IVH). If the customer has not commented about this condition or the EI does not show in the GWM/IVH, disregard the PI and proceed with diagnostics found in the published service information. THIS IS NOT A RECALL…" In short, look at the Class Defect only if someone asks about it with specificity, otherwise, ignore them and do not advise customers about the cause.

[22] These only reflect the misrepresentations in GM's brochures. On information and belief there are similar misrepresentations in advertising used through other mediums. *See, e.g.* GM commercial with Howie Long and GM Chief Engineer Eric Stanczak, posted on YouTube on July 5, 2015, and with 404,161 views as of December 26, 2017. In this commercial, Long states, "Everyone knows that Chevy Silverado comes from the family of the most dependable, longest-lasting full-size pickups on the road." https://www.youtube.com/watch?v=tLFe8g7E2sc.

regarding the marketing of the Class Vehicles and whether to notify owners, lessees and prospective buyers and lessees of the defects.

## CLASS ACTION ALLEGATIONS

### The Proposed Class

59.     Plaintiff brings this lawsuit on behalf of himself and all other similarly situated individuals and business entities pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), 23(b)(3) and/or 23(c)(4). The proposed class includes:

> All persons or entities who purchased or leased a Class Vehicle in the State of North Carolina.

60.     Excluded from this proposed class are (a) Defendants, their affiliates, subsidiaries, successors, predecessors, legal representatives, officers, directors and current or former employees, and any entity in which Defendants have a controlling interest; (b) the Judge and/or Magistrate to whom this case is assigned, and any members of their staff; (c) any person who has suffered personal injures as a result of the defects in the Class Vehicle air conditioning systems; (d) the Estate or representative of any person who died as a result of the defects in the Class Vehicle air conditioning systems; (e) all federal, state and local governmental entities and agencies; and (f) any person whose claims against General Motors regarding the issues raised in this lawsuit have already been settled or adjudicated. Plaintiff reserves the right to amend the definition of the proposed classes if discovery and/or further investigation reveals they should be expanded, divided into further subclasses or modified in any other way.

### Numerosity

61.     Although the exact size of the Class cannot be determined without discovery, Plaintiff believes over two million Class Vehicles have been sold or leased in

-30-

the United States.[23] The number sold or leased in North Carolina is undoubtedly significant, given the large number of pickups and full-size SUVS registered here. Joinder of so many potential parties is impractical. In these circumstances disposition of the claims to a single action will provide substantial benefit to all parties and to the Court. On information and belief, Defendants will have records which identify those who purchased and leased Class Vehicles in North Carolina and their contact information.

### *Predominance of Common Issues*

62.     Common questions of law and/or fact exist as to all members of the Class. These common issues predominate over the questions that might affect individual class members. The common factual and legal issues include, but are not limited to:

- Whether there are defect(s) in the air conditioning systems of the Class Vehicles and, if so, the exact nature of the defect(s);

- When General Motors first learned, or should have learned, of the defect(s);

- What steps General Motors took after learning of the defect(s);

- Whether GM developed fixes that cured the air conditioning system of defect(s), the nature of the fixes, when the fixes were developed, when the fixes were deployed and whether the fixes solved the problems with the Class Vehicle air conditioning systems;

- When GM disclosed the existence of the defect(s) in the air conditioning systems to Class Members and, if so, when GM did so and in what fashion;

- If GM did not notify Class Members of the defects, why it failed to do so and whether the failure was knowing or intentional;

---

[23] See footnote 7, *supra.*

- What express and implied warranties applied to the Class Vehicles;

- Whether General Motors breached any express warranties;

- Whether the Class Vehicles were unfit for the ordinary purposes for which they were used;

- Whether GM breached any implied warranties;

- Whether GM engaged in an unconscionable action or course of action;

- Whether GM engaged in "false, misleading or deceptive acts or practices";

- Whether GM represented the Class Vehicles had characteristics, ingredients, uses, or benefits they did not have;

- Whether GM represented that the Class Vehicles were of a particular standard, quality or grade when they were of another;

- Whether GM knowingly made false or misleading statements of fact concerning the Class Vehicles' need for parts, replacements or repair service;

- Whether Plaintiff and members of the Class are entitled to equitable relief, including injunctive and/or declaratory relief establishing the Class Vehicles are defective and an order requiring General Motors to notify all Class Members of the defect and to repair the air conditioning systems in all such vehicles without charge;

- Whether Defendants committed fraud or fraudulently concealed the facts about the defect in the air conditioning system of the Class Vehicles; and

- Whether Defendants made a profit from the sale or lease of Class Vehicles and, if so, the amount of that profit.

*Typicality*

63.    Plaintiff's claims are typical of those claims of the Class, as all class members purchased or leased a Class Vehicle with the defective air conditioning system. The fact issues surround these claims are the result of the conduct of General Motors, including repair costs, future costs of repairs, loss of use and diminished value, among others.

*Adequacy*

64.    Plaintiff will adequately represent and protect the interest of the Class. Plaintiff does not have an interest that conflicts with the interest of the Class. Plaintiff has retained counsel with substantial experience in both prosecuting class actions and in prosecuting claims against auto manufacturers for vehicle defects. Plaintiff and his counsel are committed to vigorous prosecution of these claims and have the financial wherewithal to do so.

*Superiority*

65.    A class action is the best means for a fair and efficient adjudication of the claims of Plaintiff and the members of any Class. The Plaintiff and members of the Classes have all suffered injuries due to Defendants' conduct. Given the size of the injury and the expense of prosecuting a claim involving defects in vehicles, it is highly unlikely individual class members would be able to redress the wrongs set out in this pleading. Even if individual Class members could do so, there would potentially be hundreds, or thousands of lawsuits filed around the country, clogging the courts and posing the risk of inconsistent or contradictory judgments. Further, from the Defendants' perspective, hundreds, or thousands of individual cases around the state would require Defendants to

produce for deposition certain employees hundreds, or thousands of times, and address repetitive document productions and discovery disputes with potentially inconsistent rulings. A class action allows for efficient adjudication of the common fact and legal issues presented in this case in a manner that is fair to all.

## CAUSES OF ACTION

### CAUSE OF ACTION NUMBER 1
### VIOLATION OF NORTH CAROLINA'S
### UNFAIR TRADE PRACTICES ACT
**(On behalf of Plaintiff and the Class)**

66.     Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

67.     Plaintiff brings this action under the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. §75–1.1 *et seq.*, both on his behalf and on behalf of all members of the class.

68.     Each Defendant is a "person", "firm" or "corporation" within the meaning of North Carolina's Unfair Trade Practices Act, N.C. Gen. Stat. §75–1.1 *et seq.* Each Defendant engages in "commerce" within the meaning of N.C. Gen. Stat. §75.1-1(b).

69.     Plaintiff and all other class members similarly situated are "persons" within the meaning of N.C. Gen. Stat. §75-16.

70.     Defendants each engaged in unfair or deceptive acts or practices in or affecting commerce, as defined by North Carolina's Unfair Trade Practices Act. Included among the unfair or deceptive acts or practices committed are:

- Failing to disclose the Class Vehicles and the air conditioning systems in Class Vehicles were not of the particular standard, quality, or grade the Defendants represented;

-34-

- Failing to disclose all known latent defects in the Class Vehicles including the latent defects in the air conditioning systems and the Class Defect;

- Failing to disclose the air conditioning systems of the Class Vehicles would likely fail during the useful life of the Class Vehicles;

- Failing to give adequate warnings and notice regarding defects in the Class Vehicles' air conditioning systems, especially the Class Defect to the persons who purchased and/or leased the Class Vehicles before the purchase, despite possessing knowledge of the defects prior to the sale or lease of the Class Vehicles;

- Failing to disclose, either through warnings or recall notices, and/or actively concealing the fact that the Class Vehicles' air conditioning systems had a latent defect, despite knowing of the defects as early as 2013;

- Causing Plaintiff and members of the class to expend sums of money to repair the Class Defect, and refusing to reimburse them for those costs, despite knowing of the Class Defect; and

- Unconscionably limiting the express warranty despite knowing of the Class Defect.

71.     Each Defendant's unfair or deceptive acts or practices injured Plaintiff and class members. Plaintiff and other Class Members relied on Defendants' representations. Had Defendants properly disclosed the facts about the Class Vehicles air conditioning systems, Plaintiff and Class Members would either not have purchased their vehicles or would have paid less for the vehicles. Each Defendant's unfair or deceptive acts or practices proximately caused the following actual damages to Plaintiff and Class Members, among others:

- Expenditure of monies and loss of time to repair the Class Defect in the Class Vehicles;

- Loss of use of the Class Vehicles while the Class Defect was being repaired and/or replaced;

- Aggravation of driving without a functioning air conditioning system while waiting for repairs to be made;

- The purchase or lease of Class Vehicles they would not have purchased or leased had they known of the Class Defect;

- Overpaying at the time of purchase or lease for the Class Vehicles, as a vehicle with a Class Defect is worth less than the same exact vehicle without the defect; and

- Diminution in value of their Class Vehicle, as a vehicle today with a Class Defect is worth less than the same exact vehicle without the defect.

Plaintiff and Class Members seek recovery of their full actual damages.

72.    Plaintiff individually and on behalf of Class Members asks the Court to award treble the amount of damages fixed by the verdict pursuant to N.C. Gen. Stat. §75-16.

73.    In addition to actual and treble damages, Plaintiff and the Class Members ask the Court to award them reasonable attorney's fees and costs pursuant to N.C. Gen. Stat. §75-16.1.

### CAUSE OF ACTION NUMBER 2
### NEGLIGENT MISREPRESENTATION
### (On behalf of Plaintiff and the Class)

74.    Plaintiff, both individually and on behalf of the class, incorporates by reference all prior allegations contained in this pleading.

75.    Plaintiff brings this negligent misrepresentation action both on his behalf and on behalf of all members of the class.

76.    In the course of their business Defendants supplied false information for the guidance of others. The false information included, among other facts:

- Claims that the Class Vehicles and the air conditioning systems in Class Vehicles were of a particular standard, quality, or grade when in fact they were not;

- Claims that the Class Vehicles were durable, dependable, reliable or long-lasting when in fact they contained known latent defects in the air conditioning systems and the Class Defect;

- Failing to disclose the air conditioning systems of the Class Vehicles would likely fail during the useful life of the Class Vehicles;

- Failing to give adequate warnings and notice regarding defects in the Class Vehicles' air conditioning systems, especially the Class Defect to the persons who purchased and/or leased the Class Vehicles before the purchase, despite possessing knowledge of the defects prior to the sale or lease of the Class Vehicles; and

- Actively concealing the fact that the Class Vehicles' air conditioning systems had a latent defect, despite knowing of the defects as early as 2013.

77.    This information was prepared and distributed to the public without reasonable care and Plaintiff and Class Members justifiably relied on this information. Plaintiff and Class Members would not have purchased or leased the Class Vehicles had they known of the Class Defect, or they would have paid less for the purchase or lease of their Class Vehicle because a vehicle with a latent defect in the air conditioning system is worth less than the identical vehicle without the defect.

78.    Each Defendants' negligence was a proximate cause of the injuries and damages Plaintiff and class members have sustained.

Among the damages Plaintiff and class members sustained that were legally caused by Defendants are:

- Expenditure of monies to repair the Class Defect in the Class Vehicles;

- Loss of use of the Class Vehicles while the Class Defect was being repaired and/or replaced;

- Aggravation of driving without a functioning air conditioning system while waiting for repairs to be made;

- The purchase or lease of Class Vehicles they would not have purchased or leased had they known of the Class Defect;

- Overpaying for the Class Vehicles they did purchase or lease, as a vehicle with a Class Defect is worth less than the same exact vehicle without the defect; and

- Diminution in value of their Class Vehicle, as a vehicle today with a Class Defect is worth less than the same exact vehicle without the defect.

## CAUSE OF ACTION NUMBER 3
## FRAUD
### (On behalf of Plaintiff and the Class)

79.    Plaintiff, both individually and on behalf of the class, incorporates by reference all prior allegations contained in this pleading.

80.    Plaintiff brings this fraud action both on his behalf and on behalf of all members of the class.

81.    In the course of their business Defendants made false representations or concealed material facts. The false representations made and material facts concealed include the following, among others:

- Representations that the Class Vehicles and the air conditioning systems in Class Vehicles were of a particular standard, quality, or grade when in fact they were not;

- Representations that the Class Vehicles were durable, dependable, reliable or long-lasting when in fact they contained known latent defects in the air conditioning systems and the Class Defect;

- Failing to disclose the air conditioning systems of the Class Vehicles contained the Class Defect and would likely fail during the useful life of the Class Vehicles;

- Failing to give adequate warnings and notice regarding defects in the Class Vehicles' air conditioning systems, especially the Class Defect to the persons who purchased and/or leased the Class Vehicles before the

purchase, despite possessing knowledge of the defects prior to the sale or lease of the Class Vehicles; and

- Actively concealing the fact that the Class Vehicles' air conditioning systems had a latent defect, despite knowing of the defects as early as 2013.

82. Defendants' false representations made and material facts concealed were reasonably calculated to deceive, and in fact they did so. Plaintiff and Class Members would not have purchased or leased the Class Vehicles had they known of the Class Defect, or they would have paid less for the purchase or lease of their Class Vehicle because a vehicle with a latent defect in the air conditioning system is worth less than the identical vehicle without the defect.

83. Defendants made the false representations made and concealed the material facts with intent to deceive. Defendants were aware of the Class Defect in the Class Vehicles, on information and belief, from the time they were introduced in the market place, or certainly shortly thereafter. Despite this knowledge Defendants never revealed the existence of the Class Defect until November 2017, and then only begrudgingly. Defendants were aware that if they revealed the existence of these defects, consumers would either not purchase the Class Vehicles or would pay significantly less for them, depriving Defendants of significant profits.

84. The false representations made and material facts concealed do in fact deceive, as evidenced by the purchase of over 2 million of the Class Vehicles, including the vehicles purchased by Plaintiff and other Class Members.

85.     Each Defendants' fraud was a proximate cause of the injuries and damages Plaintiff and class members have sustained. Among the damages Plaintiff and class members sustained that were legally caused by Defendants are:

- Expenditure of monies to repair the Class Defect in the Class Vehicles;

- Loss of use of the Class Vehicles while the Class Defect was being repaired and/or replaced;

- Aggravation of driving without a functioning air conditioning system while waiting for repairs to be made;

- The purchase or lease of Class Vehicles they would not have purchased or leased had they known of the Class Defect;

- Overpaying for the Class Vehicles they did purchase or lease, as a vehicle with a Class Defect is worth less than the same exact vehicle without the defect; and

- Diminution in value of their Class Vehicle, as a vehicle today with a Class Defect is worth less than the same exact vehicle without the defect.

## ANY APPLICABLE STATUTE OF LIMITATIONS IS TOLLED

86.     To the extent Defendants might assert any claim made by any Plaintiff or member of any class is barred by a statute of limitations, Plaintiffs and all Class Members would show that the doctrines of fraudulent concealment and the discovery rule apply, and any potentially applicable statute of limitations is tolled.

### *Fraudulent Concealment*

87.     As set out in this pleading, the Class Vehicles have defects in their air conditioning systems. These defects, which can be objectively verified, are hidden from buyers and lessees, cannot reasonably be discovered by consumers and do not manifest themselves until an air conditioning system failure occurs. Plaintiffs and class members were unaware of the Class Defect when they purchased their Class Vehicle, even though

Plaintiff exercised due diligence in trying to make sure the air conditioning system worked properly. Defendants engaged in affirmative conduct to try to lead a reasonable person to believe no claim of fraudulent concealment existed. As described above, they advertised the Class Vehicles as being well-engineered, durable, reliable and dependable and provided that air conditioning was standard on the Class Vehicles. They failed to disclose the existence of the Class Defect for years, and in their technical service bulletins and Engineering Instructions instructed dealers not to mention these issues when Class Vehicles were brought in for repair. Even when the air conditioning system fails, the Plaintiffs and Class Members were never advised by Defendants that the failure was due to an inherent defect in the air conditioning system of the Class Vehicles, leaving Plaintiffs and Class Members whose system have failed thinking they were just the victims of bad luck. As for those Plaintiffs and Class Members whose air conditioning systems have not yet failed, they have no reason to know or believe their Class Vehicles have an air conditioning defect and Defendants made the knowing decision not reveal that defect to them until November 2017, at which time it only revealed the "condition" to certain owners of certain Class Vehicles.

88.    Given the documentary evidence, the November 2017 letter sent by General Motors to certain owners of certain Class Vehicles and the fact that, on information and belief Defendants have been aware of the defects in the air conditioning systems of the Class Vehicles since the first release of the Class Vehicles, Defendants have not only failed to reveal to Plaintiffs and Class Members the existence of the Class Defect but, on information and belief, have actively concealed its existence. Instead,

Defendants have engaged in affirmative conduct that would lead a reasonable person to believe no fraudulent concealment existed.

89.     Any potentially applicable statute of limitations has been tolled by Defendants' fraudulent concealment.

### Discovery Rule

90.     The defects in the air conditioning systems of the Class Vehicles are inherently undiscoverable until the system fails. Even then, the mere failure of a part of the air conditioning system does not alert an individual owner or lessee of the existence of the Class Defect, much less a defect in the air conditioning systems in all Class Vehicles. This is especially true since Defendants did not reveal these defects to owners, lessees or potential owners and lessees and, on information and belief, made the decision to actively conceal this information.

91.     Plaintiff and class members did not know of the Class Defect and, through the exercise of reasonable diligence, should not have known of them until late 2017. The Defendants never advised of the existence of the Class Defect until November 2017 and there were no news reports of the problems with the air conditioning systems in Class Vehicles until the summer of 2017. Even then, those reports were aired in geographic locations far from New Mexico.

92.     Alternatively, with respect to Plaintiff, the very earliest Plaintiff might have had any clue about the Class Defect was when his condenser failed in the summer of 2017. Even though he personally changed out the condenser, there was no reason for him to suspect the cause of the failure of the condenser was a latent defect in the air conditioning system of his vehicle, much less in all Class Vehicles.

93.     Given these facts, any potentially applicable statute of limitations is tolled by the discovery rule until Plaintiff and Class Members reasonably should have discovered the existence of Class Defects in the Class Vehicles in late 2017.

## JURY DEMAND

94.     Plaintiff and Class Members demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

95.     WHEREFORE, Plaintiff, on behalf of himself and all other members of the Class, requests that citation be issued and served upon Defendants in the form and manner prescribed by law, requiring that Defendants appear and answer herein; and that upon final hearing hereon, Plaintiff have judgment against Defendants jointly and severally for the following:

- An order determining the causes of action alleged may be maintained as a class action, certifying one or more proposed classes, designating Plaintiff as named representative of the class or classes and designating the undersigned counsel as Class counsel;

- A declaration that the air conditioning systems in the Class Vehicles are defective;

- An order requiring Defendants, at their own cost, to notify all class members of the Class Vehicle defects;

- An order requiring Defendants to repair and eliminate the Class Defects in the Class Vehicles within a reasonable time at no cost to the class members, and to agree to repair the defects in the Class Vehicles at any time in the life of the Class Vehicles at no cost to the class members;

- An order requiring Defendants to provide class members a vehicle of the same size and quality as the Class Vehicle any time a Class Vehicle is brought in for the repair of a Class Defect;

- An award of all actual, special, incidental, punitive and statutory damages to which Plaintiff and all Class Members are entitled, including all profits Defendants received as a result of the sale or lease of the Class Vehicles;

- An award to Plaintiff and the class members of restitution, disgorgement of profits, rescission and/or any other equitable remedy to which they are entitled;

- An award of reasonable attorney's fees and costs to counsel for Plaintiff and the class members;

- Pre-judgment and post-judgment interest as allowed by law; and

- An award of all such other relief, at law or in equity, to which Plaintiff and Class Members may be justly entitled.

Respectfully submitted,


 /s/ Matthew E. Lee
Matthew E. Lee
N.C. State Bar No. 35405
Whitfield Bryson & Mason LLP
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile: 919-600-5035
matt@wbmllp.com


Richard Schechter
Texas State Bar No. 17735500
LAW OFFICE OF RICHARD SCHECHTER, P.C.
One Greenway Plaza, Suite 740
Houston TX 77046-0102
Telephone: 713-623-8919
Facsimile: 713-622-1680
richard@rs-law.com

Charles Clinton Hunter
Texas State Bar No. 24072160
Dennis C. Reich
Texas State Bar No. 16739600
REICH & BINSTOCK, LLP
4265 San Felipe, Suite 1000
Houston TX 77027
Telephone: 713-622-7271
Facsimile: 713-623-8724
chunter@reichandbinstock.com
dreich@reichandbinstock.com

Ernest "Bo" Hopmann, III
Texas State Bar No. 09982800
LAW OFFICE OF ERNEST O. HOPMANN, III
3700 N. Main Street
Houston TX 77009
Telephone: 713-869-9252
Facsimile: 713-869-8859
bhopmann@pdq.net

**ATTORNEYS FOR PLAINTIFFS**